UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


SAMUEL MASON JR.

           CIVIL ACTION

VERSUS

           NUMBER 10-143-FJP-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

### NOTICE

   Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

   In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

   ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

   Baton Rouge, Louisiana, May 13, 2011.


        s/ *Stephen C. Riedlinger*
        STEPHEN C. RIEDLINGER
        UNITED STATES MAGISTRATE JUDGE


Report  Standard of Review  Background  Analysis  Conclusion  Recommendation

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SAMUEL MASON JR.

CIVIL ACTION

VERSUS

NUMBER 10-143-FJP-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

## MAGISTRATE JUDGE'S REPORT

Plaintiff Samuel Mason Jr. brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his claim for disability and supplemental security income (SSI) benefits.

For the reasons which follow, the Commissioner's decision should be affirmed.

## Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v.*

*Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).[1]  If substantial
evidence supports the Commissioner's findings, they are conclusive
and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 91
S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th
Cir. 1995).  Substantial evidence is that which is relevant and
sufficient for a reasonable mind to accept as adequate to support
a conclusion.  It is more than a mere scintilla and less than a
preponderance.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.
1994); *Carey v. Apfel*, 230 F.3d 131 at 135.  A finding of no
substantial evidence is appropriate only if no credible evidentiary
choices or medical findings support the decision.  *Boyd v. Apfel*,
239 F.3d 698, 704 (5th Cir. 2001).  In applying the substantial
evidence standard the court must review the entire record as whole,
but may not reweigh the evidence, try the issues de novo, or
substitute its judgment for that of the Commissioner, even if the
evidence weighs against the Commissioner's decision.  *Newton v.
Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the
evidence are for the Commissioner and not the court to resolve.
*Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

---

[1] It is well-established that in cases brought under § 405(g),
evidence outside of the administrative record is generally
inadmissible, and on judicial review the court cannot consider any
evidence that is not already a part of the administrative record.
*Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981); *Flores v.
Heckler*, 755 F.2d 401, 403 (5th Cir. 1985).

Report Standard of Review Background Analysis Conclusion Recommendation

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v.* Bowen, 809 F.2d 1054, 1057 (5th Cir. 1981); Western *v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 404.1505 and § 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 404.1520 and § 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

Listing impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the

body system they affect.  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.  For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing.  An impairment that exhibits only some of the criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. § 404.1525 and § 416.925.

The burden of proving disability rests on the claimant through the first four steps.  At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work.  If the claimant shows at step four that he or she is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy.  *Myers*, *supra*.  If the Commissioner meets this burden the claimant must then show that he or she cannot in fact perform that work.  *Boyd*, 239 F.3d at 705.

## Background

Plaintiff Samuel Mason Jr. was 44 years of age at the time of the ALJ's unfavorable decision denying his application for

benefits.[2]  AR pp. 18, 86.  Plaintiff completed high school, and had worked in the past as a laborer at various businesses and as a driver for a car dealership.  AR pp. 19, 91-92, 96, 108-14.

In his application for disability and SSI benefits filed in January 2008 the plaintiff alleged July 18, 2000 as the onset of his disability.  AR pp. 67-77.  Plaintiff stated that as of that date he was unable to perform substantial gainful activity because of pain and limitations caused by a back injury he sustained at work in 2000, that eventually led to back surgery in January 2003.[3]

Plaintiff's application was denied and the plaintiff requested a hearing before an administrative law judge (ALJ).  AR pp. 36-46.  A hearing was held on April 28, 2009 and the ALJ issued an unfavorable decision on June 15, 2009.  AR pp. 5-30.  At step two of the disability analysis, the ALJ found that the plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine, status post-operative left hemi-laminectomy at L4-5. AR p. 11.  The ALJ concluded that this severe impairment left the plaintiff with a residual functional capacity (RFC) for sedentary work as defined in the regulations, except that he needed to be

---

[2] Under the regulations the plaintiff's age placed him in the category of "younger person."  20 C.F.R. § 404.1563(c) and § 416.963(c).

[3] AR pp. 19, 91, 126-42 (clinic and progress notes of orthopaedic surgeon Dr. Jorge E. Isaza).

able to change from a sitting to a standing/walking position on occasions to alleviate pain. AR p. 13.[4]

Because of the plaintiff's severe back impairment and residual functional capacity, the plaintiff clearly was unable to do his past relevant work, which was mostly medium to heavy in exertional level. AR pp. 14, 109-14. The ALJ then proceeded to the final step of the sequential analysis to determine whether jobs existed in significant numbers in the national economy that the plaintiff could perform given his age, education, work experience and residual functional capacity.[5]

At the fifth step the ALJ relied on Medical-Vocational Rules 201.27 and 201.21[6] stating that these rules would result in a finding that the plaintiff was not disabled, whether the rules were

---

[4] At step three the ALJ found that the plaintiff's impairment did not meet or medically equal a listed impairment. The residual functional capacity determination is necessary to proceed to steps four and five of the disability analysis. AR p. 12.
"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) and § 416.967(a).

[5] 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v)(defining of fifth step of the disability analysis); 20 C.F.R. §§ 404.1566 and 416.966 (defining work which exists in the national economy).

[6] 20 C.F.R. Ch.III, Pt. 404, Subpt. P, App.2, Table No. 1.

used directly or as a framework for the decision. The ALJ explained his fifth step finding as follows:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.27 and Rule 201.21. However, the additional limitations have little or no effect on the occupational base of unskilled sedentary work. A finding of "not disabled" is therefore appropriate under the framework of these rules. The ability to change positions has no affect on the ability to do sedentary work.

AR p. 14-15.

The Appeals Council considered the plaintiff's request for review and denied the request, affirming the ALJ's decision on January 21, 2010. AR pp. 1-3. Plaintiff then filed this petition for judicial review challenging the final decision of the Commissioner that he is not disabled.

## Analysis

Plaintiff argued that the ALJ: (1) failed to base his residual functional capacity assessment on the totality of the record; (2) failed to evaluate the medical opinion evidence under the proper legal standards and did not base his medical opinion findings on the totality of the record; (3) failed to evaluate the plaintiff's credibility under the proper legal standards and did not base his credibility finding on the totality of the record, and (4) failed to obtain the testimony of a vocational expert, which was necessary

because of the presence of nonexertional limitations.

Review of the administrative record as a whole demonstrates that the ALJ did not commit the reversible errors alleged by the plaintiff. The record as a whole establishes that the proper legal standards were applied and the ALJ's findings were supported by substantial evidence.

**Plaintiff did not establish that he is disabled at Step Three and the ALJ's finding is supported by substantial evidence.**

At step three the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff argued that the ALJ's finding that his impairment does not meet or equal a listing impairment is unsupported. According to the plaintiff, the objective medical evidence established that he is disabled because his impairment meets or equals Listing 1.04A.

Listing 1.00 encompasses impairments of the musculoskeletal system. Listed impairment 1.04A addresses disorders of the spine. These include disorders such as "herniated nucleus pulposus, spinal arachnioditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture," which result in compromise of a nerve root or the spinal cord, with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle

weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Plaintiff cited and relied on the MRI performed December 19, 2007[7] and the treatment records of Dr. Isaza, asserting that they establish he is disabled under Listing 1.04A.

While the MRI and Dr. Isaza's notes may show that the plaintiff has some of the findings required by the listing, the plaintiff failed to cite specific, objective evidence in the record which demonstrates that his back impairment would meet or equal all of the findings required to satisfy Listing 1.04A.[8] For example, the plaintiff did not cite to any evidence in the record which shows that he has motor loss (atrophy with associated muscle weakness or muscle weakness), and positive straight leg raising tests in both the sitting and supine positions. An impairment that exhibits only some of the listing's criteria, no matter how severely, does not qualify as a listed impairment. *Sullivan, supra*. Therefore, the plaintiff's claim that the ALJ erred in finding him not disabled at the third step under Listing 1.04A. is without merit.

---

[7] AR p. 151.

[8] Plaintiff asserted that Dr. Isaza's records support the argument that his condition satisfies Listing 1.04A., but the plaintiff failed to cite the specific parts of the doctor's reports which he contends establish the findings required by the listing.

Report Standard of Review Background Analysis Conclusion Recommendation

At step three, the plaintiff also contended that the ALJ failed to properly evaluate the medical opinions of his treating doctor, the consultative examiner, and the non-examining state agency medical consultant.[9] Plaintiff asserted that the ALJ did not consider the opinions in accordance with the factors set forth in 20 C.F.R. § 404.1527(d) and § 416.927(d) and SSR 96-6p. This argument is also without merit.

Although the ALJ did not list all the factors and discuss the medical opinions in relation to each one, he adequately considered and weighed the opinions under the proper legal standards and his conclusions were supported by substantial evidence. The ALJ cited and summarized the medical evidence and opinions, and he specifically stated that he considered all the opinion evidence in accordance with §§ 416.927(d) and 404.1527(d) and SSR 96-6p.[10]  AR

---

[9] AR pp. 126-42(Dr. Isaza's treatment records 3/21/03-9/7/05); AR pp. 156-61(2/20/08 report of Dr. Levie Johnson); AR pp. 162-69 (2/28/08 RFC assessment of Dr. Charles Lee).

[10] In *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit held that in the absence of reliable medical evidence from a treating or examining physician the ALJ is required to consider each of the factors under 20 C.F.R. § 404.1527(d)(2) before declining to give any weight to the opinions of the treating specialist.
    In this case there was reliable medical evidence from an examining physician, Dr. Johnson, and it is apparent that the ALJ did not summarily reject or decline to give credit to the reports/opinions of Dr. Isaza. *See*, *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Zimmerman v. Astrue*, 288 Fed.Appx. 931,
(continued...)

Report Standard of Review Background Analysis Conclusion Recommendation

p. 13. Furthermore, contrary to the plaintiff's arguments, the ALJ did not disregard or discount the reports of Dr. Isaza and the consultative examiner, Dr. Johnson. Again, a review of the ALJ's decision shows that he fully considered their reports/opinions in his analysis. AR pp. 11-14. Even if it was error for the ALJ not to specifically analyze them in his finding at step three, the error was harmless because the plaintiff has not shown that either of these doctor's opinions establish that he is disabled under Listing 1.04A.[11]

**The ALJ's residual functional capacity and credibility findings comport with the relevant legal standards and are supported by substantial evidence**

The residual functional capacity and credibility findings are critical at steps four and five of the disability analysis - the determination of whether a claimant can perform any of his past relevant work or other work in the national economy. Plaintiff argued that the ALJ's RFC and credibility findings did not comport

---

[10](...continued)
935-36 (5th Cir. 2008).

[11] Procedural perfection in administrative proceedings is not required. A judgment will not be vacated unless the substantial rights of a party have been affected. Procedural improprieties are a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).

Report  Standard of Review  Background  Analysis  Conclusion  Recommendation

with the relevant legal standards[12] and were not supported by substantial evidence. Contrary to the plaintiff's arguments, the totality of the record does not reveal reversible error or a lack of substantial evidence on these issues.

The ALJ's statement of the plaintiff's residual functional capacity is as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he needs to be able to change from a sitting to standing/walking position on occasions to alleviate pain.

AR p. 13.

With regard to the credibility of the plaintiff's statements about the severity and limiting effects of his impairments, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR p. 13.

These findings by the ALJ show that the ALJ did not entirely discredit the plaintiff's subjective complaints. He found the plaintiff's statements regarding the pain and limiting effects of his back impairment were credible to the extent they were

---

[12] Plaintiff cited several cases as well as 20 C.F.R. §§ 404.1529(c); 416.929(c) and SSR 96-7p. Record document number 10-2, Plaintiff's Memorandum in Support of Appeal, pp. 23-24.

consistent with his RFC assessment, but not credible beyond that finding.  This conclusion is supported by substantial evidence.

For example, the plaintiff essentially testified that he was unable to work because of pain, an inability to stand and sit for a long time, and bad balance.  However, as noted by the ALJ, the evidence of record shows that no doctor who treated, examined, or reviewed the plaintiff's medical records ever stated that the plaintiff was unable to work/perform work-related activities. Plaintiff's treating surgeon, Dr. Isaza stated on August 20, 2003, "he may be able to do more sedentary work which would allow him to change positions during the day." AR p. 138-39.  Dr. Isaza stated on March 5, 2004, "[h]e is able to do sedentary work with no lifting over 20 pounds," but did not mention any need to change positions. AR p. 134.  On September 7, 2005, Dr. Isaza noted, "I think it's okay for him to work on sedentary duty status with frequent position changes." AR p. 126.

Six months later, Dr. Johnson performed a consultative examination and made the following observations and assessments of the plaintiff's functional abilities: (1) estimated ability to lift 5 to 10 pounds, ability to sit or stand 10 to 15 minutes and walk one block, and inability to crouch, squat and stoop due to back pain; (2) ability to dress and climb on and off the exam table independently, normal heel-to-toe walking, grip strength, pushing,

Report  Standard of Review  Background  Analysis  Conclusion  Recommendation

pulling and reaching, with no neurological, sensory or motor deficits present; and, (3) lumbar tenderness with spasms and mild decreased range of motion, with a slow but nonantalgic gait, and the need to use an assistive device for long walks and support only. AR pp. 156-61.

The state agency medical consultant's review on February 28, 2008 resulted in the following assessment of the plaintiff's residual functional capacity: (1) the plaintiff could occasionally lift and carry 10 pounds and less than 10 pounds frequently; stand/walk with normal breaks for at least 2 hours in an 8 hour workday, and sit with normal breaks for about 6 hours in an 8 hour workday, with an unlimited ability to push and/or pull, including operation of hand and/or foot controls; (2) the plaintiff had some postural limitations - he could never climb ladders, ropes or scaffolds or crouch, but could occasionally climb ramps/stairs, balance, stoop, kneel and crawl; and, (3) the plaintiff used a cane for support. AR pp. 162-63. The record also reflects that the plaintiff was on medication for pain relief. Plaintiff did not testify that the medication was ineffective, and his testimony that he sometimes experienced side effects of headaches and nausea was not supported by any of the medical reports. AR p. 28. Finally, the ALJ also appropriately considered the record evidence of the plaintiff's daily activities. AR pp. 13, 22-23, 27-28, 100-03.

Report Standard of Review Background Analysis Conclusion Recommendation

The ALJ is not required to mechanically follow every guiding regulatory factor in articulating his reasons for weighing credibility or denying claims.[13] The above cited portions of the record demonstrate that the ALJ adequately explained the reasons for finding that the plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's assessment of the plaintiff's residual functional capacity. The ALJ's weighing and determination of the plaintiff's credibility was supported by substantial evidence.

The ALJ weighed all the above medical reports and doctor's opinions, the plaintiff's statements and other evidence in reaching his RFC finding. The same evidence cited and discussed with regard to his credibility finding supports the conclusion that the ALJ's RFC assessment was based on the proper legal standards and substantial evidence. It is the role of the ALJ to weigh the evidence. The ALJ was not required to accept Dr. Isaza's last statement that the plaintiff could do sedentary work with frequent position changes. The ALJ could consider all the varied statements by Dr. Isaza, the opinions of Drs. Johnson and Lee, along with the

---

[13] *See, Clary v. Barnhart*, 214 Fed.Appx. 479 (5th Cir. 2007), citing, *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Story v. Astrue*, 294 Fed.Appx. 883 (5th Cir. 2008), citing, *Haywood v. Sullivan*, 888 F.2d 1463, 1469-70 (5th Cir. 1989).

Report Standard of Review Background Analysis Conclusion Recommendation

other evidence and find that the plaintiff could perform sedentary work, with a need to change from a sitting to standing/walking position on occasions to relieve pain. Because the proper legal standards were followed and the finding was supported by substantial evidence the court is precluded from deciding the issue de novo or reweighing the evidence.[14]

### The ALJ's finding at step five complied with the proper legal standards and was supported by substantial evidence.

Plaintiff essentially argued that the ALJ could not rely on Medical-Vocational Rules 201.27 and 201.21[15] at the fifth step because his RFC finding included a nonexertional limitation - the need to change from a sitting to standing/walking position on occasions to alleviate pain - which eroded the unskilled sedentary

---

[14] Citing SSR 96-9p, the plaintiff also argued that his need to use a cane is inconsistent with the ability to do sedentary work. However, SSR 96-9p describes several circumstances where the use of a cane does not ordinarily significantly erode the unskilled, sedentary occupational base. Some examples are when the "medically required hand-held assistive device" is needed only for prolonged ambulation, walking on uneven terrain, ascending or descending slopes, or reducing pain while walking. Dr. Johnson stated in February 2008 that the plaintiff only needed the cane for walking support, and/or for long walks, and had the full use of the other upper extremity for carrying. AR p. 161. Dr. Lee noted the use of an assistive device was for support only. AR p. 164. These findings are consistent with situations described in SSR 96-9p where use of a cane does not significantly erode the ability to do sedentary work.

[15] 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App.2, Table No. 1.

Report  Standard of Review  Background  Analysis  Conclusion  Recommendation

occupational base to the point where vocational expert testimony
was required.  In support of these arguments the plaintiff cited
and relied on *Fraga v. Bowen*,[16] *Fields v. Bowen*,[17] and *Scott v.
Shalala*.[18]  The Commissioner argued, however, that the ALJ could
rely on the Medical-Vocational Guidelines and Rules 201.27 and
201.21 because the evidence supported the ALJ's conclusion that the
plaintiff's additional limitations did not significantly affect the
ability to do unskilled, sedentary work.[19]

The law and regulations support the Commissioner's position.
It is well-established that when the claimant suffers only from
exertional impairments or his nonexertional impairments do not
significantly affect his residual functional capacity, the ALJ may
rely exclusively on the Medical-Vocational Guidelines to determine
whether there is other work available that the claimant can
perform.  But if the claimant suffers from nonexertional
impairments or a combination of exertional and nonexertional
impairments, then the Commissioner must rely on a vocational expert

---

[16] 810 F.2d 1296, 1304 (5th Cir. 1987).

[17] 805 F.2d 1168, 1170 (5th Cir. 1986).

[18] 30 F.3d 33, 34-35 (5th Cir. 1994).

[19] The Commissioner referred to the Medical-Vocational
Guidelines and Rules as the "Grid."  The Medical-Vocational Rules
are part of the broader Medical-Vocation Guidelines.  To avoid
confusion, this report will use the term Medical-Vocational Rules
when referring to the rules at issue in this case.

[Report](Report) [Standard of Review](Standard of Review) [Background](Background) [Analysis](Analysis) [Conclusion](Conclusion) [Recommendation](Recommendation)

to establish that other jobs exist in the national economy. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Newton, supra*. The Fifth Circuit later held in *Scott* that when a claimant's residual functional capacity includes a restriction that he must be able to alternate between sitting and standing as needed, this is a significant nonexertional limitation which precludes application of the Guidelines and requires the ALJ to obtain and consider the testimony of a vocational expert.

Consistent with *Scott*, Social Security Ruling 96-9p[20] also provides if an individual whose need to alternate sitting and standing cannot be accommodated by scheduled breaks and a lunch period, his occupational base for a full range of unskilled

---

[20] The Fifth Circuit has frequently relied on Social Security rulings in evaluating ALJ's decisions. Social Security rulings are internal administrative interpretations and general policy statements, which are not binding on the court, but may be consulted when the statute provides little guidance. While entitled to deference and frequently relied on by courts, they are not binding on courts. *Myers v. Apfel*, 238 F.3d at 620. Administrative failure to follow a ruling does not necessarily constitute reversible error. Accordingly, when an ALJ errs by failing to apply a ruling, a plaintiff seeking judicial review must also demonstrate prejudice arising from that error to be entitled to relief. *Mettlen v. Commissioner of Social Sec. Admin.*, 2003 WL 1889011 (E.D. April 10, 2003), citing, *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir.1981). A claimant establishes prejudice by showing that adherence to the ruling might have led to a different decision. *Id.*; *Newton*, 209 F.3d at 458.

[Report](#) [Standard of Review](#) [Background](#) [Analysis](#) [Conclusion](#) [Recommendation](#)

sedentary work will be eroded.[21]  Therefore, when there is more than
a slight impact on the individual's ability to perform the full
range of sedentary work, if the ALJ finds that the individual is
able to do other work the ALJ must cite examples of jobs the
individual can do and provide a statement of the incidence of such
work in the region where the individual lives or in several regions
of the country.

The ALJ's analysis and findings at the fifth step were not
contrary to the above law and policy guidance.  In this case,
unlike in *Scott,* the ALJ did not find that the plaintiff must have
the option to sit or stand as needed.  The ALJ found that for pain
relief the plaintiff needed to be able to change from a sitting to
standing or walking position on occasions, and found that this
would have little or no effect on the occupational base of
unskilled sedentary work.  The ALJ then relied on Rules 201.27 and
201.21 to support his finding that the plaintiff could do other
work in the national economy.

It is apparent from these findings the ALJ concluded that the
plaintiff's need to alternate positions could be accommodated by
normal breaks and a lunch period, and would have no more than a

_____

[21] SSR 96-9p, Policy Interpretation Ruling Titles II and XVI:
Determining Capability to Do Other Work--Implications of a Residual
Functional Capacity for Less Than a Full Range of Sedentary Work,
1996 WL 374185 (S.S.A. 1996).

_____

Report Standard of Review Background Analysis Conclusion Recommendation

slight impact on the plaintiff's ability to perform the full range of sedentary work. In these circumstances the occupational based for a full range of unskilled sedentary work is not eroded and the ALJ may appropriately rely on the Medical-Vocational Guidelines to support his conclusion that the plaintiff is not disabled at the fifth step.[22]

This conclusion is supported by the decision in *Carnahan v. Apfel*[23] and the guidance provided in Social Security Ruling 83-12. SSR 83-12 states that a vocational source should be consulted to clarify the implications for the occupational base in cases of unusual limitation of the ability to sit or stand. But persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc. would still be able to perform a defined range of work. In *Carnahan*, the court stated that in finding the claimant had the exertional capacity for sedentary work and was not disabled without relying on a vocational expert, the

---

[22] Plaintiff also argued that the ALJ was required to obtain vocational expert testimony because he suffered from nonexertional postural limitations and pain. This argument is also without merit. It is clear that the ALJ took into account the plaintiff's limitations due to pain in his finding that in order to alleviate pain, the plaintiff needed to occasionally alternate positions.

Under SSR 96-9p the plaintiff's postural limitations are not the type of restrictions that usually erode the occupational base for a full range of unskilled sedentary work, because these activities are not usually required in sedentary work.

[23] 247 F.3d 241 (5th Cir. 2001)(per curiam).

Report Standard of Review Background Analysis Conclusion Recommendation

ALJ assumed that the claimant's need to alternate sitting and standing could be accommodated by breaks at two-hour intervals. Therefore, the court found it was not error for the ALJ to rely on the Medical-Vocational Guidelines. The court distinguished its decision in *Scott* where it had held that vocational evidence was required, by noting that *Scott* involved a finding that the claimant must be able to alternate between sitting and standing as needed.

Therefore, based on his determination of the plaintiff's residual functional capacity, along with the plaintiff's age, education and work experience, the ALJ in this case properly relied on Medical-Vocational Rules 201.27 and 201.21.

## Conclusion

The record as a whole demonstrates that the plaintiff's claims of error are without merit. The ALJ applied the correct legal standards, did not improperly weigh the evidence, and his findings are supported by substantial evidence.[24] Plaintiff's failure to establish a legal or factual basis for reversal of the ALJ's decision requires that the final decision denying the plaintiff's

---

[24] All of the evidence in the record does not have to support the ALJ's findings. Even if substantial evidence supports the claimant's position it is not grounds for reversal. As long as the finding or decision is supported by substantial evidence in the record as a whole it must be affirmed. *See*, *Carroll v. Dept. Health, Ed. and Welfare*, 470 F.2d 252, 254 n. 4 (5th Cir. 1972); *Haley v. Massanari*, 258 F.3d 742, 746 (8th Cir. 2001).

Report Standard of Review Background Analysis Conclusion Recommendation

claim for benefits be affirmed.

## Recommendation

It is the recommendation of the magistrate judge that the final decision of Michael J. Astrue, Commissioner of Social Security denying the claim of Samuel Mason Jr. for disability and supplemental security income (SSI) benefits be affirmed and this action be dismissed.

Baton Rouge, Louisiana, May 13, 2011.

s/ *Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

Report Standard of Review Background Analysis Conclusion Recommendation